Jason M. Yancey (11808)
Helgesen, Houtz & Jones P.C.
*Attorneys for Plaintiff*
1513 N. Hill Field Road, Suite 3
Layton, Utah 84041
Telephone: (801) 544-5306
Email: jyancey@utahattorneys.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

| | |
|---|---|
| Gentox Medical Services, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Shadi Abdelwahab, an individual doing business as Starlion Distribution, LLC, <br><br> Defendants. | Case No.: 2:21-cv-00119-CMR <br><br> **COMPLAINT** |

Plaintiff Gentox Medical Services, LLC ("**Plaintiff**"), through its counsel, complains against Shadi Abdelwahab ("**Abdelwahab**") doing business as Starlion Distribution, LLC ("**Starlion**" and collectively with Abdelwahab, the "**Defendants**") as follows:

## NATURE OF THE CASE

1. Plaintiff alleges that Defendants conspired to dupe Plaintiff into becoming an unwitting financier for Defendants' business under the auspices of a purchase contract for 32,670 boxes of nitrile examination gloves. Plaintiff further alleges that upon agreeing to sell to Plaintiff the gloves, Defendants accepted payment of some $282,595.50 from Plaintiff and then used Plaintiff's funds to purchase the products only to sell them to another party and refund Plaintiff its money. The net effect of Defendants' conduct is that Defendants obtained the use of Plaintiff's funds under false pretenses and fraud and used Plaintiff's money to fund Defendants' business only to sell the purchased product to another buyer.

2. Plaintiff alleges that the above-identified conduct constitutes, among other claims, a breach of the purchase contract, a civil conspiracy, and fraud.

## THE PARTIES

3. Plaintiff Gentox Medical Services, LLC is a Pennsylvania limited liability company with principal place of business in Salt Lake City, Utah.

   a. Plaintiff has one member, an individual, who is a citizen of, domiciled in and a resident of the State of Utah. "[F]or diversity purposes, an LLC is a citizen of every state in which its members reside." *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d

1261, 1266 (D. Utah 2010). See also *Cosgrove v. Bartolotta?* 150 F.3d 729, 731 (7th Cir. 1998) (citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of each of its members).

4. Defendant Shadi Abdelwahab is an individual, who, upon information and belief, is a citizen and resident of Ohio.

5. Defendant Starlion Distribution, LLC is, upon information and belief, an unregistered business entity wholly owned and operated by Defendant Abdelwahab. To the extent Starlion Distribution LLC is a valid entity, upon information and belief, Starlion Distributions LLC's member is Mr. Abdelwahab, who is a citizen and resident of Ohio.

**JURISDICTION AND VENUE**

6. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff asserts, upon information and good faith belief, that Plaintiff has been damaged in an amount not less than $250,000.00.

7. The U.S. District Court for the Northern District of Utah has personal jurisdiction over the Defendants because Defendants have sufficient minimum contacts with the State of Utah, including, but not limited to, the following:

a. Defendants entered into a contract with Plaintiff with full knowledge that Plaintiff's principal place of business was within the State of Utah;

b. The parties' contract/performance was directed at the State of Utah and Defendants contracted to ship the products to Utah;

c. Defendants received a wire transfer from a bank in Utah; and

d. Defendants initiated a wire transfer to a bank in Utah.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the transactions giving rise to Plaintiff's claims were all either within Salt Lake County or directed at Salt Lake County.

## GENERAL ALLEGATIONS

9. On or about October 15, 2020, the parties entered into a contract wherein Defendants would provide 32,670 boxes of nitrile gloves (the "Gloves") and Plaintiff would pay to Defendants the amount of $282,595.50 (the "Purchase Contract").

10. The Purchase Contract and material terms were memorialized in Invoice # 1978 provided to Plaintiff by Defendants on or about October 15, 2020 (the "Invoice").

11. The Invoice clearly denotes the price, the quantity, and the fact that

Plaintiff is located in Utah.

12. Plaintiff fully performed under the Purchase Contract and paid to Defendants the full contract amount of $282,595.50 (the "Contract Payment").

13. Defendants acknowledged and confirmed receipt of the payment.

14. The Contract Payment was sent via wire transfer from a financial institution located in the State of Utah.

15. Defendants acknowledged and confirmed shipment of the purchased Gloves.

16. Defendants acknowledged and confirmed that the Gloves would be delivered on or about December 5, 2020.

17. Via wire transfer on or about December 7, 2020, Defendants unilaterally refunded Plaintiff's funds. This wire transfer was sent to and received by a financial institution located within the State of Utah.

18. On December 11, 2020, Defendants, through counsel, informed Plaintiff that the Purchase Agreement "is hereby terminated and void."

19. Plaintiff is in the business of marketing and selling medical supplies, including nitrile medical gloves.

20. Plaintiff had agreements in place to sell the Gloves to third parties at a profit.

21. Plaintiff relied on Defendants' representations that the Gloves were in route and would be delivered on December 5, 2020.

22. When Defendants refused to provide the Gloves and terminated that Purchase Contract on December 11, 2020, Plaintiff was unable to perform or honor its commitments with third parties to whom Plaintiff has agreed to sell the Gloves.

23. Upon information and belief, Defendants never intended to deliver the Gloves to Plaintiff.

24. Upon information and belief, Defendants conspired to commit fraud and convert Plaintiff's funds by, among other things,

   a. Entering into the Purchase Agreement without any intention of actually providing the Gloves to Plaintiff;

   b. Representing and promising to deliver the Gloves on December 5, 2020 all the while marketing and selling those same gloves to another party;

   c. Repeatedly assuring Plaintiff that the Gloves were shipped and would be delivered to Plaintiff;

   d. Intentionally waiting until Defendants had received the Gloves and had sold the Gloves to another party to (i) refund Plaintiff's funds, and (ii) declare the Purchase Contract terminated and void.

25. Upon information and belief, Defendants never intended to provide Plaintiff the Gloves.

26. Upon information and belief, Defendants offered the Gloves for sale to Plaintiff as a rouse to dupe Plaintiff into paying for the Gloves so that Defendants could purchase, ship, and sell the Gloves to another party at a higher price.

27. Upon information and belief, Defendants made, among other representations and omissions, the following material misrepresentations or material omissions regarding the Gloves;

   a. By entering into the Purchase Contract, Defendants represented that they intended to sell the Gloves to Plaintiff;

   b. By accepting payment in full for the Gloves, Defendants represented that they intended to deliver the Gloves to Plaintiff;

   c. Defendants confirmed and reassured Plaintiff that the Gloves were both shipped and would arrive on December 5, 2020; and

   d. Defendants failed to inform Plaintiff that Defendants had no intention of selling the Gloves to Plaintiff or that Defendants would use Plaintiff's funds to purchase inventory/the Gloves to sell to another party at a higher price.

28. Upon information and belief, Defendants furthered their conspiracy and fraud by repeatedly reassuring Plaintiff and verifying that (1) the Gloves were shipped, (2) the Gloves were Plaintiff's purchased product, and (3) the Gloves would arrive on December 5, 2020.

29. Upon information and belief, Defendants also furthered their conspiracy and fraud by intentionally waiting until after the Gloves had arrived and been sold to another party to inform Plaintiff that Defendants were terminating the Purchase Contract.

30. Upon information and belief, Defendants utilized the proceeds from the sale of Plaintiff's Gloves to refund Plaintiff's funds.

31. Defendants' conduct in breaching the Purchase Agreement as well as Defendants' tortious conduct was directed at the State of Utah by, among other things, tricking Plaintiff into sending a wire transfer from Utah to pay for the Gloves, refunding Plaintiff's funds (after Defendants were done using the funds) to a bank in Utah, and entering into a Purchase Contract for the sale and delivery of the Gloves to Utah.

32. Defendants' conduct was expressly aimed at Plaintiff in the State of Utah.

33. Defendants had full knowledge that Plaintiff operated from Utah, that

the funds were be sent from and to Utah, and that the Gloves were being shipped to Utah. Therefore, Defendants were fully aware that the brunt of the injury resulting from Defendants' scheme would be felt within Utah.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

34. Plaintiff incorporates herein by reference the allegations contained in the foregoing paragraphs as though set forth in full herein.

35. The Purchase Contract is a valid and enforceable contract.

36. The material provisions of the Purchase Contract were set forth in writing on the Invoice.

37. Plaintiff fully performed and paid all amounts due under the Purchase Contract.

38. Defendants breached the Purchase Contact by, among other things, selling the Gloves to another party and refusing to provide the Gloves to Plaintiff.

39. As a direct and proximate result of Defendants' breaches, Plaintiff has been damaged in an amount to be established at trial, but in no event less that than $250,000.

## SECOND CLAIM FOR RELIEF
### (FRAUD)

40. Plaintiff incorporates herein by reference the allegations contained in the foregoing paragraphs as though set forth in full herein.

41. Defendant Abdelwahab made the following material representations,

   a. That Defendants would sell and deliver the Gloves to Plaintiff at the price and in the quantities represented in the Invoice; and

   b. That the Gloves would be delivered to Plaintiff on December 5, 2020

42. Upon information and belief, Defendants knew the above-identified representations were false when made and Defendants never intended to provide the Gloves but used the Gloves to entice Plaintiff to pay the funds.

43. The above-identified representations were made by Defendant Abdelwahab during the months of October through December 2020.

44. Upon information and belief, in addition to the actual material misrepresentations identified above, Defendants failed to disclose and omitted the following material facts,

   a. That Defendants had no intention of providing the Gloves as promised,

   b. That Defendants planned to utilize Plaintiff's funds to purchase, transport, and then sell the Gloves to another party,

c. That Defendants would market and sell the Gloves all the while promising delivery to Plaintiff;

d. That the purchase and sale of the Gloves was a scheme employed by Defendants to make use of Plaintiff's funds,

e. That Defendants planned to terminate the Purchase Contract once the Gloves were received by Defendants and sold to another party.

45. Upon information and belief, the above-identified material omissions represent circumstances and facts that occurred and that Defendants had full knowledge of but failed to disclose to Plaintiff.

46. Upon information and belief, the above-identified material misrepresentations and omissions were made or concealed for the express purpose of inducing Plaintiff to pay funds to purchase the Gloves only to be diverted and used in Defendants' fraudulent scheme.

47. Plaintiff reasonably relied on Defendants' promises, statements, and omissions by (1) paying the funds to purchase the Gloves, (2) marketing and selling the Gloves to other third parties, and (3) entering into agreements and/or promising delivery of the Gloves to third parties.

48. Plaintiff had no reason to believe or know that Defendants were actively scheming to defraud Plaintiff and make use of Plaintiff's funds.

49. Plaintiff was injured by Defendants' fraudulent conduct by, among other things, the loss of use of Plaintiff's funds, the loss of business opportunity, lost sales, lost profits, damaged business relationships with third parties, and damaged reputation.

50. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has been damaged in an amount to be established at trial, but in no event less that than $250,000.00 in compensatory and general damages plus an additional amount to be determined at trial in punitive damages.

**THIRD CLAIM FOR RELIEF**
**(CONSPIRACY)**

51. Plaintiff incorporates herein by reference the allegations contained in the foregoing paragraphs as though set forth in full herein.

52. Upon information and belief, Defendants have conspired to (1) commit fraud, and (2) convert Plaintiff's funds for their own purposes and benefit.

53. Upon information and belief, Defendants actively engaged in a scheme/conspiracy to dupe Plaintiff into becoming an unwitting financier (in the amount of $282,595.50) for Defendants' business under the auspices of a purchase contract for 32,670 boxes of nitrile examination gloves.

54. Upon information and belief, Defendants fraudulently negotiated a Purchase Contract and led Plaintiff to believe that the Gloves were available and being shipped to Plaintiff when Defendants never intended to perform under the Purchase Contract.

55. Defendants' statements caused Plaintiff to pay $282,595.50.

56. Upon information and belief, Defendants then used Plaintiff's funds to finance their own business operations and to market and sell the Gloves to another party.

57. Upon information and belief, Defendants never intended to provide the Gloves to Plaintiff but used Plaintiff as an unwitting financier.

58. Upon information and belief, Defendants always intended to terminate that Purchase Contract upon Defendants receiving the Gloves (that Plaintiff paid for).

59. The net effect of Defendants' conspiracy is that Defendants obtained the use of Plaintiff's funds under false pretenses and fraud and used Plaintiff's money to fund Defendants' business only to sell the purchased product to another buyer.

60. Upon information and belief, Defendants made several overt acts to further their conspiracy, including, but not limited to, concealing their true

intentions, entering into a Purchase Contract for the sole purpose of inducing Plaintiff to pay the funds, repeatedly lying about the status of the Gloves, marketing and selling the Gloves to another party, and otherwise stringing Plaintiff along until the Gloves had been received by Defendants and funneled to another party.

61. Upon information and belief, the Defendants had a meeting of the minds regarding the scheme/conspiracy to trick Plaintiff into financing their business operations.

62. Plaintiff has been damaged in an amount to be establish at trial, but in no event less that than $250,000.00 in compensatory and general damages plus an additional amount to be determined at trial in punitive damages.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment, as follows:

1. On Plaintiff's First Claim for Relief, asserting a claim for breach of contract, for Plaintiff's general, compensatory, and consequential resulting from the breach in an amount to be proven at the trial of this matter, but in no event less than $250,000.00, together with pre- and post-judgment interest, and collections costs and fees, including all actual attorney's fees, as allowed under the law.

2. On Plaintiff's Second Claim for Relief, asserting a claim for fraud, for Plaintiff's general, compensatory, consequential, and punitive damages resulting from Defendants' fraud in an amount to be proven at the trial of this matter, but in no event less than $250,000.00 plus punitive damages, together with pre- and post-judgment interest, and collections costs and fees, including all actual attorney's fees, as allowed under the law.

3. .On Plaintiff's Third Claim for Relief, asserting a claim for civil conspiracy, for Plaintiff's general, compensatory, consequential, and punitive damages resulting from Defendants' civil conspiracy to trick Plaintiff into becoming an unwitting financier of Defendants' business and to divert the purchased Gloves to another party in an amount to be proven at the trial of this matter, but in no event less than $250,000.00 plus punitive damages, together with pre- and post-judgment interest, and collections costs and fees, including all actual attorney's fees, as allowed under the law.

4. For Plaintiff's attorney fees and costs incurred in bringing this action as provided by law and/or contract.

5. For such other and further relief as the Court deems just and proper under the circumstances.

Dated this 1st day of March, 2021.

                                         <u>/s/ Jason M. Yancey</u>
                                         Jason M. Yancey
                                         HELGESEN HOUTZ & JONES, PC
                                         Attorneys for Plaintiff